UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DONTAY JAMES CRAWFORD,

        Petitioner,

    v.

L.J. FLEMING, WARDEN, Wallens
Ridge State Prison, and

ELLEN ROSENBLUM, Oregon Attorney
General,

        Respondents.

_____

Case No. 3:15-cv-02211-MC

OPINION AND ORDER

MCSHANE, District Judge:

      Along with a co-defendant, petitioner was indicted by a grand jury in Multnomah County

for multiple counts of robbery, assault, and attempted murder, all stemming from two separate

criminal episodes that occurred on November 25, 2004. Although the juvenile record and the

arrest history of the petitioner were readily obtainable, petitioner's trial counsel admitted that he

failed to investigate or inquire into these facts. Deficient of this knowledge, trial counsel advised

petitioner that "his worst case sentencing scenario would likely be around 17 ½ years." Resp't

1   - OPINION AND ORDER

Ex. 119 at 3. On another occasion counsel told petitioner that "a sentence of . . . over 20 years is really unrealistic. Don't even put that in your mind." Resp't Ex. 127 at 75. Based on this advice, petitioner refused to accept an initial plea offer of 200 months and later refused to negotiate a settlement that would have resulted in a prison range of 17 ½ to 20 years. Following trial, a presentence report was ordered that reflected a much more serious history of criminal conduct than the minimal criminal background known to trial counsel. Petitioner was sentenced to 396 months in prison.

Petitioner brings this habeas corpus proceeding under 28 U.S.C. § 2254, challenging his convictions and sentence for robbery, assault, and attempted murder. Because of his failure to adequately investigate petitioner's criminal history, trial counsel provided ineffective assistance by advising his client that a trial outcome could be no worse than a negotiated settlement. This caused prejudice to the petitioner. Because the PCR court failed recognize the constitutional significance of trial counsel's failure to reasonably investigate petitioner's criminal history prior to advising petitioner about potential outcomes, the decision of the PCR court was an unreasonable application of clearly established federal law. The petition is GRANTED.

<u>BACKGROUND</u>

On March 1, 2005, petitioner and a co-defendant were charged with four counts of Robbery in the First Degree, two counts of Robbery in the Second Degree, and one count each of Attempted Murder, Kidnapping in the Second Degree, and Assault in the First Degree. Resp't Ex. 102, at 1-3. The charges arose from two separate robberies that occurred on November 25, 2004, one of which involved a shooting and assault. *Id.*

On July 26, 2005, petitioner's trial counsel was appointed and took over petitioner's defense. Resp't Ex. 119 at 1.

On September 19, 2005, trial counsel sent a letter advising petitioner that he did "not have a strong case for trial" and the potential maximum sentence could be 450 months if petitioner was convicted on all counts and given consecutive sentences.[1] Counsel's letter further stated "such a sentence is unlikely" and advised petitioner that counsel believed a plea agreement of 11-12 years was possible but for petitioner's request "that no offer be made." Resp't Ex. 126 at 1-3.

On September 21, 2005, the State extended a plea offer of 200 months, slightly longer than 16 ½ years. Resp't Ex. 128 at 2. Petitioner rejected the offer after his counsel advised that the offer was "way too high" and they should explore plea negotiations during a judicial settlement conference. Resp't Ex. 129 at 22-23.

On September 26, 2005, prior to hearing the scheduled arguments on defense motions, the trial court offered the parties an opportunity to engage in settlement discussions. Transcript of Proceedings (Tr.) at 17-18 (ECF No. 29).[2] Petitioner's counsel informed the court that the State had already made an offer and petitioner had rejected it. The trial court ultimately granted petitioner's motion to sever his case from that of his co-defendant and denied petitioner's motions to suppress. Tr. at 68-69, 188.

According to counsel, petitioner began to express an interest in plea negotiations after the motions hearing, culminating in settlement negotiations the day of the trial. Resp't Ex. 127 at 10-12, 24-25. During the negotiations, the prosecutor indicated that the State would entertain offers

---

[1] Counsel's estimated maximum sentence of 450 months was based on counts charged against petitioner in two separate cases, one of which was subsequently dismissed. Resp't Ex. 119 at 2, n.1; Resp't Ex. 126 at 2. With respect to convictions at issue in this case, counsel advised that the court had discretion to impose four consecutive sentences of 90 months, for a total of 360 months. Resp't Ex. 126 at 2.

[2] Transcript citations refer to the page numbers located at the bottom right of the pages.

in the 17 to 19-year range and invited petitioner to make an offer of 17 ½ years. *Id.* at 12-13, 79. Counsel again advised petitioner that he would not receive a sentence much longer than the State's suggested offer if he was convicted at trial. *Id.* at 14 ("And my advice was that the trial is – at the conclusion of trial, if we lost, everything would not be dramatically or very much different than what had been offered"), 64-65. Based on counsel's advice, petitioner did not extend an offer and proceeded with trial. *Id.* at 15 ("But based on my advice in our discussion, we didn't accept an offer.").

At trial, four victims identified petitioner as the person who had robbed them; petitioner was also identified as the person who shot one victim. Tr. at 287, 337, 386, 426-427. In his defense, petitioner testified that he was at the scene of the first robbery but ran away after hearing gunshots. Tr. at 627-633. He also testified that he spent the evening with family and friends and was not present at the second robbery. Tr. at 641-46. The jury returned guilty verdicts on all eight counts presented at trial. Tr. at 778-80, 783-84.[3]

Shortly before the sentencing date, counsel received the pre-sentence investigation report, which recommended a sentence of 475 months based in large part on petitioner's uncharged criminal conduct that was unknown to trial counsel. Tr. at 819; Resp't Ex. 127 at 71. Counsel requested a postponement to investigate and obtain mitigation evidence. Tr. at 802-03.

At sentencing, the trial court sentenced petitioner to a total of 396 months of imprisonment. For convictions related to the first criminal episode, the court imposed consecutive 90-month sentences for each robbery, a concurrent 90-month sentence for the attempted murder, and a partially consecutive 90-month sentence for the assault (36 months running consecutive) for a total of 216 months. Resp't Ex. 101. For convictions related to the

---

[3] The State dismissed the kidnapping charge prior to trial.

second criminal episode, the court imposed consecutive 90-month terms for each robbery, merging the lesser included counts for a total of 180 months. *Id.*

Following exhaustion of his remedies on direct appeal, petitioner filed a petition for post-conviction relief (PCR) alleging, in addition to those raised in this Court, several ineffective assistance of counsel claims. Resp't Ex. 115-16; Pet'r Brief, Ex. A (ECF No. 43). The PCR court denied petitioner's claims, finding no deficient performance by counsel and no prejudice. Resp't Ex. 130. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Resp't Exs. 134-35.

On November 23, 2015, petitioner filed the instant Petition for Writ of Habeas Corpus.

DISCUSSION

Petitioner asserts five claims of ineffective assistance of trial counsel, identified as Grounds One(a) through One(e). Pet. at 3-4 (ECF No. 2); Resp't Response at 2 (ECF No. 30). Petitioner presents argument in support of only Ground One(e) and relies on the arguments presented during his PCR appeal to support his remaining grounds. *See generally* Pet'r Brief; *see also* Pet'r Sur-Reply at 17 (ECF No. 60). After review of the record, I find that petitioner has not met his burden of establishing entitlement to habeas relief on Grounds One(a)-(d). *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (a petitioner bears the burden of proving his claims).

In Ground One(e), petitioner alleges that counsel rendered ineffective assistance when advising petitioner about the consequences of rejecting the State's plea offers. Petitioner asserts that counsel failed to obtain critical information about his criminal history and erroneously told petitioner that even if convicted at trial, he would not receive a sentence that was significantly longer than a negotiated sentence. Petitioner maintains that counsel's deficient advice caused prejudice to him, because petitioner rejected the State's offer and received a much harsher

sentence after trial. *Strickland v. Washington*, 466 U.S. 668 (1984) (ineffective assistance of counsel requires deficient performance by counsel and resulting prejudice). The PCR court rejected this claim, finding that counsel provided petitioner with all of the information he needed to consider a plea offer, and that petitioner would not have accepted a plea in any event. Resp't Ex. 130 at 3. Based on these findings, the PCR court concluded, "No inadequacy in any respect pled, no prejudice." *Id.* at 4. Respondents maintain that the PCR court's decision is reasonable and entitled to deference.

A federal court may not grant a habeas petition regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority, or if it reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams,* 529 U.S. at 407-08, 413; *see also Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam) (state court decisions that are not "contrary to" clearly established Supreme Court law may be set aside only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or are based on 'an unreasonable determination of the facts'").

Under well-established Supreme Court precedent, the right to the effective assistance of counsel extends to "the plea-bargaining process," including the decision whether to accept or reject a plea offer. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("During plea negotiations

defendants are entitled to the 'effective assistance of competent counsel.'"); *Missouri v. Frye*, 566 U.S. 134, 145 (2012); *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To establish ineffective assistance, a petitioner must show that 1) "counsel's performance was deficient," and 2) counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

To show deficient performance, a petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. The question is not whether counsel's advice was correct, but "whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To establish prejudice, a petitioner "must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Because petitioner rejected the State's plea offers, he must show that, but for the ineffective advice of counsel, there is a reasonable probability he would have accepted the plea offer and received a sentence less severe than the sentence imposed. *Id.* at 164.

With respect to the first *Strickland* prong, the PCR court found that counsel's September 19 letter provided petitioner with "all of the information he needed to decide for himself whether or not to take a deal." Resp't Ex. 130 at 3. Specifically, the PCR court found:

> [Petitioner's] att wrote him a letter that correctly predicted that he would be found guilty at trial. Att then goes on to accurately tell him the possible sentence ranges including mandatory minimums and the possibility of consecutive sentences. Att tells him what att thinks is most likely range, but has made it clear to pet that sentencing is up to the judge. Att still believes the sentence given is an aberration.

*Id.* The PCR court's decision is not reasonable in light of the record.

Notably, the State extended the 200-month plea offer on September 21, 2005 – after counsel's September 19 letter. Petitioner testified that his counsel "told me he ran into the prosecutor on my case at that time in the hallway and let her know that I was possibly willing to settle my case, and what was she willing to offer? And she said 16 years." Resp't Ex. 129 at 22. Petitioner testified that counsel "thought it was way too high, that he believed it should be around 11 or 12 years, no more than that. And he told me let's just wait until our settlement conference and the judge would be able to weigh in and try to settle the matter." *Id.* at 23. Closer to and during trial, petitioner participated in unsuccessful judicial settlement efforts, and the State invited petitioner to make an offer of approximately 17 ½ years, slightly longer than the State's prior offer. Resp't Ex. 127 at 12-13, 79. Petitioner testified that counsel repeatedly advised him he would receive "no more than 17 and a half years," even if he was convicted at trial. Resp't Ex. 129 at 27-29. As a result, petitioner did not make an offer.

Petitioner's testimony is supported by counsel's PCR affidavit explaining the advice he gave to petitioner.

> After providing the September 19, 2005 letter to Mr. Crawford, we attempted to settle his case through participation in settlement conferences with the prosecution and the court. I told Mr. Crawford that the sentencing exposure set forth in my previous correspondence was theoretically possible but that I did not feel it was a realistic possibility that he would receive sentences of that length.
>
> When the prosecutor was not willing to offer Mr. Crawford combined sentences of less than 16 years, I told him that in my opinion if he went to trial and was convicted of all counts the sentences he should expect to receive were not going to be much longer than the prosecutor's plea offer. I told Mr. Crawford that his worst case sentencing scenario would likely be around 17 ½ years.

Resp't Ex. 119 at 2-3.

Similarly, during his PCR deposition, trial counsel described the settlement negotiations and recalled that the "numbers they were discussing were in the 17- to 19-year range." Resp't

Ex. 127 at 12. Counsel testified that petitioner "was looking to my thoughts on what a sentence would be after trial" and "my advice was that...at the conclusion of trial, if we lost, everything would not be dramatically different or very much different than what had been offered, that there wouldn't be a big spread between the…sentence a judge would impose if we went to trial...That was my opinion." *Id.* at 13-14. When advising petitioner about potential sentences, counsel admitted that he told petitioner "'a sentence of...over 20 years is really unrealistic. Don't even put that in your mind. It'll never happen' kind of thing." *Id.* at 75. In other words, counsel "did not give any indication" that a 33-year sentence "would be a realistic outcome." *Id.* at 69.

Despite the above discussions between counsel and petitioner, the PCR court found that there was no plea offer (respondents now concede that the record reflects a number of offers or offers to negotiate) and that counsel's September 19 letter constituted adequate advice. Respondents maintain that the PCR court's decision was reasonable because counsel advised petitioner of the potential maximum sentence and simply made an inaccurate sentencing prediction, one that does not constitute ineffective assistance of counsel. *See* Resp't Reply at 4-5 (ECF No. 54). I disagree.[4]

Significantly, the PCR court's reliance on counsel's September 19 letter ignores critical conversations between counsel and petitioner *after* September 19 and fails to acknowledge counsel's admitted failure to obtain crucial sentencing information before advising petitioner about the consequences of rejecting a plea. Merely advising his client of the maximum possible sentence did not absolve trial counsel from adequately investigating the readily obtainable criminal history he needed to advise his client with respect to plea negotiations.

---

[4] In his deposition, counsel explained that the 450-month estimated maximum was simply a "superficial" tabulation of all Measure 11 terms if imposed consecutively in both of petitioner's pending cases, including the one that was subsequently dismissed. Resp't Ex. 127 at 22-23.

Under *Strickland*, counsel's strategic choices and the advice given to a criminal defendant must be based on a reasonable investigation of the relevant facts and law. *Strickland*, 466 U.S. at 690-91. In the context of a plea offer, counsel must reasonably investigate and assess the potential consequences and sentencing ramifications to ensure that a defendant makes an informed decision whether to accept or reject a plea offer.[5] *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("Knowledge of the comparative sentencing exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("Because an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney, counsel have a duty to supply criminal defendants with necessary and accurate information.").

Consequently, if counsel fails to reasonably investigate or seek critical sentencing information and provides inaccurate or misleading advice as a result, counsel's performance is deficient. *See United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (by "grossly underestimating" his client's "sentencing exposure," counsel "breached his duty as a defense lawyer in a criminal case 'to advise his client fully on whether a particular plea to a charge appears desirable'") (citation omitted); *Cooper v. United States*, 660 Fed. App'x 730, 736 (11th Cir. Aug. 18, 2016) (per curiam) (finding ineffective assistance of counsel where an attorney did not investigate his client's criminal history before advising him to reject a plea offer); *Holmes v. Johnson*, 617 Fed. App'x 758, 763-64 (9th Cir. July 15, 2015) (petitioner stated a claim for

---

[5] Respondents also argue that the PCR court found that petitioner failed to raise a claim based on the lack of investigation regarding mitigation. I note that the PCR court's discussion arose in the context of a perceived claim of "some kind of negligence in regards of mitigation," which is distinct from the argument raised by petitioner. Resp't Ex. 129 at 57-58. Regardless, counsel's duty to render accurate advice necessarily includes the duty to obtain information pertinent to such advice; in this case, counsel had the duty to obtain factual information relevant to sentencing exposure before advising petitioner whether to accept or reject a plea offer.

ineffective assistance where her trial counsel incorrectly "advised her that the sentence imposed under the plea…was functionally the same as the sentence imposed if she were convicted"); *United States v. Lewis*, 477 Fed. App'x 79, 82 (4th Cir. Apr. 20, 2012) (finding that counsel's advice to reject a plea offer based on an erroneous legal assessment of the defendant's criminal history constituted ineffective assistance).

Here, the uncontested evidence of record establishes that counsel failed to investigate or sufficiently inquire into petitioner's criminal history, even though a defendant's past criminal conduct is a significant factor in sentencing. *State v. Ferman-Velasco*, 333 Or. 422, 425, 41 P.3d 404, 406 (2002) ("The cornerstone of the sentencing guidelines is the concept that sentences be based upon a consideration of two factors: the seriousness of the crime and the defendant's criminal history"); *cf. Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (declaring that "[t]he notion that defense counsel must obtain information that the State has and will use against the defendant" is not only "a matter of common sense" but also a professional obligation).

Counsel testified that he was taken aback when he received the sentencing recommendation of 475 months, based in large part on petitioner's juvenile and uncharged criminal conduct.

> My recollection is after I read the presentence investigation and saw the number that they were talking about in the presentence investigation, which was very, very surprising to me, I said, "Judge, we need more time. We need to do mitigation." *They brought up these police reports and some -- they brought a lot of things about his background to say he's a really bad guy, even though he doesn't have very many convictions at all*. I needed to do -- on his background, to get more information on these incidents and to mitigate.

Resp't Ex. 127 at 71 (emphasis added); *see also id.* at 28 (testifying that "I remember [the sentencing recommendation] was surprising enough and large enough that I took a setover and the judge…gave me all the time I needed once we saw the number"). He added:

> Well, I was unaware of the information. Why I didn't ask for it, about his background, *I should have found out more*. I got his criminal background. I knew about the incident described by his codefendant about why he was afraid of Mr. Crawford, which is a specific incident. We had information on that. But the things that they talked about in the presentence investigation were prior juvenile matters and uncharged misconduct that I was a little unaware of. *I just simply didn't ask Mr. Crawford enough questions about his background.*

*Id.* at 72-73 (emphasis added). Counsel conceded, "But had I thought about getting that information prior to trial, it was obtainable." *Id.* at 72.

Counsel also testified that he would have given petitioner different advice if he had learned about petitioner's background: "Had I known what I know now and learned in the presentence investigation, I'd say, 'Look, the judges sentence two different things. They sentence the crime and the person. Now that I know more about you as a person, the judge is more likely to go completely consecutive.'" *Id.* at 75.

In sum, counsel admitted that he "should have found out more," and if he had done so, counsel would have advised petitioner differently. Resp't Ex. 127 at 72-75. In other words, counsel did not fully investigate petitioner's sentencing exposure before advising petitioner that he would probably receive a sentence of 17 ½ years and "never" more than 20 years if convicted at trial. Counsel's advice was not simply an inaccurate sentencing prediction; it was a "gross mischaracterization of the likely outcome." *Iaea*, 800 F.2d at 865; *see also Chacon v. Wood*, 36 F.3d 1459, 1464 (9th Cir. 1994) (finding a "gross" mischaracterization of the likely sentence where defendant was told he would serve three months if he pleaded guilty but was sentenced to ten years). Telling a defendant that a maximum sentence is not likely is entirely different from telling a defendant that a particular sentence will "never happen" and "to get it out of your head." Resp't Ex. 127 at 75; *see also id.* at 70-71.

Regardless of whether counsel advised petitioner of the theoretical maximum sentence in his letter of September 19, counsel's subsequent advice diluted, if not negated, the substance of that letter. Based on counsel's deficient advice, petitioner understandably believed that any sentence he received, even if he went to trial and lost, would not be significantly different than the State's offer and "never" over 20 years. As a result, petitioner did not possess the information necessary to make an informed decision when he rejected the State's offer and refused further plea negotiations. "Counsel cannot be not required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002).

Respondents nonetheless argue that the trial court did not explain the reasons for the sentence imposed, and the record is unclear whether the information in the presentence investigation report was sufficiently damaging to impact the length of petitioner's sentence. If the report had no impact, respondents maintain that counsel could not have been deficient in failing to obtain this information, particularly when counsel believed petitioner's 33-year sentence to be an aberration, regardless of his criminal history.

It is perplexing that a critical piece of evidence – the presentence investigation report – is not included in the PCR record. At the same time, I do not find it necessary to render a decision. The record reflects that the information contained in the presentence report was detrimental enough for counsel to ask that it be stricken, or alternatively, for an extension of time to obtain mitigation evidence. Tr. at 796 ("we're going to ask the Court for 30 days so that we can prepare our mitigation package to present to the Court, given the nature of this PSI"); *see also* Resp't Ex. 127 at 73-74. The prosecutor also referenced the "very detailed PSI" during the sentencing hearing to highlight petitioner's "checkered" past and his "mindset and criminality." Tr. at 825-

26. The record also reflects that all parties involved, including the settlement judges, believed an appropriate sentence was between 15 and 20 years. Resp't Ex. 128 at 2-3. The fact that a sentence longer than 20 years was not raised until disclosure of the presentence investigation report lends credence to the assertion that the information impacted the sentence petitioner received.

Moreover, the issue is not whether the presentence investigation report convinced the trial judge to impose a 33-year sentence; counsel's deficiency is not dependent on the court's sentencing decision.[6] Rather, the issue is whether counsel was deficient when he failed to obtain critical sentencing information before advising petitioner that accepting the State's plea offer would not result in a significantly better outcome than exercising his constitutional right to trial. Counsel's uncontroverted testimony establishes that he would have given petitioner different advice had he obtained the information contained in the presentence investigation report. Even if counsel would have never thought a 33-year sentence was realistic, petitioner's concern was not necessarily the "number" of years but rather the "spread" of years between a negotiated sentence and a sentence after conviction at trial. Resp't Ex. 127 at 65, 77. Counsel testified that had he obtained the presentence information, he would have advised petitioner that the "spread" would be much greater. *Id.* at 76-77. In other words, counsel would have given different and more accurate advice had he thought to obtain petitioner's criminal history.

Accordingly, I find that the PCR court unreasonably found no deficiency when counsel failed to obtain critical sentencing information before advising petitioner about the sentencing consequences of rejecting the State's plea offer. Based on counsel's own undisputed testimony,

---

[6] Similarly, whether petitioner was prejudiced is not dependent on the trial court's decisions made *after* petitioner rejected all plea offers based on counsel's deficient advice. Prejudice depends on whether petitioner would have accepted a plea offer and received a lesser sentence if counsel had rendered different advice. *See Lafler*, 566 U.S. at 164.

he did not adequately inquire into petitioner's criminal history – even though he "should have" and could have done so – and he would rendered different advice if he had thought to obtain this critical information. This Court fails to understand what more is needed to establish deficient performance in these circumstances.

With respect to prejudice, the PCR court found that petitioner could not establish prejudice when there was "no plea offer" for petitioner to accept and he would not have accepted a plea offer under any circumstances:

> There was never a plea offer made here by the DA. The evidence is that the DA in Mult. Co does not make an offer in Measure 11 cases, but invites the pet to make an offer that he wants the DA to agree to. The DA's Measure 11 committee then has to approve the deal. The trial deputy suggested that an offer of around 20 years would probably be accepted, but the pet was never willing to make an offer in that range. There were several judicial settlement conferences, one part way through trial, but the pet never made an offer.

> [T]his court does not believe that he was willing to plead at all since he still maintained at trial that he was not the shooter in the first episode and wasn't even there for the second and that the trial judge was trying to railroad an innocent man.…The last settlement conference was after the state had presented most of their evidence and the pet knew that all of the victims had testified and id'd him and detailed the robberies and shooting. If pet truly wanted to plead, that would have been a great chance to make a deal before it was too late, and he still didn't and went on to deny all of the charges.

Resp't Ex. 130 at 3.

As petitioner points out, the PCR court mistakenly found that there was no plea offer; the State made a firm offer of 200 months on September 21, 2005, as evidenced by the prosecutor's contemporaneous notes. Resp't Ex. 128 at 2, 4. Respondents concede this point but argue that the PCR court reasonably found that petitioner was determined to go to trial and would not have accepted any plea offer. Respondents emphasize that petitioner unequivocally rejected the 200-month plea offer made on September 21, declined to make an offer in response to the

prosecutor's invitation during trial, and told the trial court that he "don't take no deals." Tr. at 886.

Whatever statements petitioner made publicly while in open court, the record reflects he participated in more than one settlement conference and expressed an interest in settlement to his attorney, particularly after his mother encouraged him to settle his case. Resp't Ex. 129 at 28; *see also* Resp't Ex. 127 at 67-68. More importantly, as the PCR court did, respondents fail to recognize that petitioner refused plea negotiations *only* because he relied on counsel's deficient advice that he would receive a functionally similar sentence if convicted at trial. Indeed, the PCR court's finding that petitioner would never have accepted a plea is premised on the misapprehension that petitioner was fully and accurately informed about the consequences of rejecting plea negotiations and nonetheless chose trial. This finding is unreasonable.

Counsel testified that as trial approached, "the situation did change" and petitioner wanted to "at least see what was out there" and "talk to the judge" about settlement possibilities. Resp't Ex. 127 at 24-25. Counsel further testified that during trial, petitioner was "looking to [counsel's] thoughts on what a sentence would be after trial and comparing the plea offer to the consequences after trial" and "weighing the plea negotiations against the outcome at trial, if there was a conviction even." *Id.* at 13, 64. Counsel stated, "I told Mr. Crawford that his worst case sentencing scenario would likely be around 17 ½ years. I provided this advice to Mr. Crawford at a time when he appeared to me to be seriously entertaining the prosecutor's plea offer." Resp't Ex. 119 at 3.

At that time, counsel's estimated difference – or the "spread" – of one to two years between a negotiated sentence and a sentence after conviction by trial was not significant enough for petitioner to waive his right to jury trial; but counsel believed a spread of eight, nine or ten

years would have been. *Id.* at 65, 77. According to counsel, petitioner told him, "But it's not enough incentive… It's not going to be that much worse after trial." *Id.* at 64. As counsel explained,

> another year or two may make all the difference in the world to some people. But it wasn't -- the spread wasn't that large. The spread wasn't that large that -- he didn't see the advantage in it. A much older person, who only has 15 years left on this earth, 13's a big difference than 15. But Mr. Crawford was relatively young, and there was no large spread between my advice and what the plea offer was.

*Id.* at 65. However, had counsel obtained the presentence investigation information, he would have advised petitioner differently:

> At a minimum, I would have said, you know, "Hey, look, the judge is going to go consecutive on the Assault II and give you three 90s and then may go higher than that."… And …the spread also would have changed from, "Look, it's going to be somewhere between 15 and 20 [years]," to, "Hey, look, it's going to be three 90s'…It's going to be 21 to 25 [years], instead of 17."…I would have said, "Look, your sentence is going to be higher than I thought previously, potentially higher, and the spread isn't as great as I thought it would be."

*Id.* 75-77. Counsel believed such a difference in the "spread" would have impacted petitioner's decision to proceed with trial. *Id.* at 77 ("instead of like two years of spread, all the sudden you're at eight, nine, and ten years' spread"). According to counsel, "Based upon my interaction with Mr. Crawford during settlement negotiations it is my belief that he would have accepted the prosecutor's plea offer but for my representations to him." Resp't Ex. 119 at 3.

During the PCR proceeding, petitioner testified that he seriously considered the State's invitation because "I was also getting pressure from my mom and other family members to just settle my case." Resp't Ex. 129 at 28. Counsel again advised petitioner that even if found guilty, he would receive "no more than 17 and a half years." *Id.* Petitioner asked counsel, "What should I do?" and he was told, "Turn it down. Let's go...all the way." *Id.* at 29, 39-40. Petitioner testified that he relied on counsel's advice, explaining, "I didn't know nothing about trials and

the law at that time, so, I mean, he was telling me I wouldn't get no more than 17 and a half, so I – I went with his advice." *Id.* at 29. Petitioner testified that if counsel had informed petitioner that he "might end up with 33 years," he would have accepted the 200-month plea offer. *Id.* at 30-31. ("No, I would [have] ignored his advice and took the 16-year plea deal.").

In other words, petitioner was not inclined to relinquish his constitutional right to trial and accept a plea offer if the outcome would not be significantly more favorable than a conviction at trial. As counsel's affidavit and testimony make clear, petitioner declined plea negotiations based on the advice counsel had provided. *See* Resp't Ex. 127 at 15 (counsel testifying that "based on my advice in our discussion, we didn't accept an offer."); *id.* at 67 (counsel testifying that when rejecting the State's plea offers, petitioner "was relying on my advice" that he "wouldn't be that much worse off if he lost at trial"). Had petitioner been advised that the plea offer would result in a significantly shorter sentence than that one imposed after conviction at trial, petitioner would have pursued settlement negotiations. *Id.* at 67-68. No evidence of record contradicts petitioner's and counsel's testimony that petitioner would have accepted the State's original plea offer – or at least pursued negotiations during trial – had he known that consecutive sentences were the likely outcome.[7]

At oral argument, respondents argued that petitioner's in-court statements belied any intent to consider plea negotiations; respondents emphasized petitioner's repeated proclamations of his innocence and his assertion that he takes "no deals." Respondents seek to portray

---

[7] Respondents do not contend that the prosecutor or the trial court would have rejected a plea agreement. I agree with petitioner that the prosecutor's invitation to negotiate exhibited its willingness to accept an offer in the suggested range – a range only slightly higher than the original offer of 200 months. *See* Resp't Ex. 127 at 67 (the prosecutor's office "wouldn't tell us that number unless they believed they could get that number"), 80 (the prosecutor's invitation to make an offer is essentially an informal offer; "they wouldn't say that unless they would accept that number, because they don't want to pay games").

petitioner as an angry, defiant young man whose behavior and personality were such at the time that he would never have entertained a plea bargain. At the same time, petitioner is as easily portrayed as a relatively unsophisticated and immature young man who does not trust the government or the system. But the record is clear on one point—he trusted his attorney. The court is not in a position to analyze outcomes based on isolated statements in the record. I am not a psychologist, but it would not amaze me if the government's portrayal of the petitioner's defiance at sentencing is the same defense mechanism I have seen displayed by young men over the last three decades in the courtroom.[8] Surprisingly, the evidence that seems most likely to speak to the personality of the petitioner, the presentence investigation prepared by the probation department and a psychological evaluation, were not made part of the PCR record.

Ultimately, the presentence investigation report is extraneous to my decision. As explained above, the record makes clear that the information in the report was significant and detrimental to petitioner. Counsel testified that he could have obtained this information prior to trial, and, if he had, he would have advised petitioner that he would likely face consecutive sentences if convicted at trial. Counsel and petitioner testified that, based on counsel's advice, petitioner rejected plea negotiations, proceeded to trial, and received a 33-year sentence – a sentence twice as long as counsel predicted. I find that the uncontested evidence of record demonstrates that petitioner would have accepted the State's plea offer but for counsel's advice, and the PCR court was unreasonable in ruling otherwise.

I recognize that, on federal habeas review, a state court decision "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). However, in this

---

[8] Further, as petitioner's counsel noted at oral argument, his declaration of innocence would not be inconsistent with a no-contest plea.

case, the PCR court failed to apprehend the relevant facts and rejected the sworn and uncontroverted testimony of petitioner and his counsel; under these circumstances, the PCR court's ruling was an unreasonable application of *Strickland* and *Lafler* and deference is not due.

The remaining question is "what constitutes an appropriate remedy." *Lafler*, 566 U.S. at 170. Petitioner is entitled to a remedy that "'neutralize[s] the taint' of the constitutional violation" without granting him a windfall. *Id.* (citation omitted). "In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence." *Id.* at 170-71. However, if "an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice." *Id.* at 171. In that situation, "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal." *Id.*

During oral argument, the parties agreed that the appropriate remedy is the 200-month plea offer initially made by the State. Petitioner requests that I "order the State to reoffer the plea agreement," and, if petitioner accepts, "the State trial court should proceed with the normal process under Oregon law for memorializing a plea agreement on the record and sentencing pursuant to that agreement." Pet'r Brief at 25. However, in this case I fail to discern a need for anything more than resentencing. Based on the record, it appears that the "sole advantage" petitioner would have received is a lesser sentence of 200 months; nothing suggests that the State offered dismissal of certain counts or a plea involving less serious counts, and the mandatory sentences for the counts of conviction would not "constrain" the resentencing of petitioner to concurrent sentences to achieve the 200-month agreement. Accordingly, I find the proper remedy is to remand the case for resentencing in accordance with the State's 200-month plea offer.

<u>CONCLUSION</u>

For the reasons explained above, the Petition for Writ of Habeas Corpus (ECF No. 2) is

GRANTED. Petitioner's sentence is VACATED and this case is remanded to the Circuit Court

for Multnomah County for imposition of a sentence consistent with the plea negotiations prior to

trial.

IT IS SO ORDERED.

Dated this 10th day of May, 2018.


<u>s/  Michael J. McShane</u>
Michael J. McShane
United States District Judge